## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| ELITE GAMING TECHNOLOGY, LLC., <br><br> Plaintiff, <br><br> v. <br><br> MICRO-STAR INTERNATIONAL CO., LTD., <br><br> Defendant. | Case No. <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Elite Gaming Technology, LLC. ("EGT" or "Plaintiff") for its Complaint against

Defendant Micro-star International Co., Ltd. ("MSI" or "Defendant"), alleges as follows:

### THE PARTIES

1.      EGT is a limited liability company organized and existing under the laws of the

State of Texas, with its principal place of business located at 102 E. Crockett Street, Marshall,

Texas 75670.

2.      Upon information and belief, MSI is a corporation organized and existing under

the laws of Taiwan, with its principal place of business located at 69 Li-Te Street Chung-Ho City

Taipei Hsien, Taiwan, and may be served pursuant to the provisions of the Hague Convention.

MSI is a leading manufacturer and seller of computers, laptops, PCs, servers, and electronic

devices in the world and in the United States.  Upon information and belief, MSI does business

in Texas and in the Eastern District of Texas, directly or through intermediaries.

**JURISDICTION**

3.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has personal jurisdiction over Defendant.  Defendant regularly conduct business and have committed acts of patent infringement and/or have induced acts of patent infringement by others in this Judicial District and/or have contributed to patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States.

5.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

6.      Defendant is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to their substantial business in this State and Judicial District, including (a) at least part of their past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

**PATENTS-IN-SUIT**

7.      On November 8, 2005, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 6,963,947 (the "'947 Patent") entitled "Driver Supporting Bridge Method and Apparatus."  A true and correct copy of the '947 Patent is available at: http://pdfpiw.uspto.gov/.piw?PageNum=0&docid=06963947.

8.      On March 16, 2004, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 6,708,045 (the "'045 Patent") entitled "Easily Reconfigured and

Upgraded Radio Card and Wireless Terminal." A true and correct copy of the '045 Patent is available at: http://pdfpiw.uspto.gov/.piw?Docid=06708045.

9.　　On March 20, 2007, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,194,613 (the "'613 Patent") entitled "Communication Protocol for Serial Peripheral Devices." A true and correct copy of the '613 Patent is available at: http://pdfpiw.uspto.gov/.piw?Docid=07194613.

10.　　On September 14, 2004, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 6,791,799 (the "'799 Patent") entitled "Digital Device Configuration and Method." A true and correct copy of the '799 Patent is available at: http://pdfpiw.uspto.gov/.piw?Docid=06791799.

11.　　On December 6, 2005, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 6,973,535 (the "'535 Patent") entitled "Digital Device Configuration and Method." A true and correct copy of the '535 Patent is available at: http://pdfpiw.uspto.gov/.piw?Docid=06973535.

12.　　On August 14, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. RE43,587 (the "'587 Patent") entitled "Method and Apparatus for Controlling a Computing System" A true and correct copy of the '587 Patent is available at: http://pdfpiw.uspto.gov/.piw?Docid=RE043587.

13.　　On March 29, 2016 the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,298,280 (the "'280 Patent") entitled "Method and Apparatus for Controlling a Computing System." A true and correct copy of the '280 Patent is available at: http://pdfpiw.uspto.gov/.piw?Docid=09298280.

14.　　EGT is the sole and exclusive owner of all right, title, and interest in the '947

Patent, the '045 Patent, the '613 Patent, the '799 Patent, the '535 Patent, the '587, and the '280 Patent (collectively, the "Patents-in-Suit"), and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit.  EGT also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

15.    EGT has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit.  On information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

## FACTUAL ALLEGATIONS

16.    The Patents-in-Suit generally cover systems and methods for use in motherboards, laptops, and desktop PCs.

17.    The '947 Patent generally relates to technology for dynamically rebalancing PCI to PCI bridges to overcome Operating System, BIOS, and Chipset limitations to allow for multiple level PCI buses.  The technology described by the '947 Patent was developed by inventors Alexei Piatesky and Frank W. Ahern.  For example, this technology is implemented in motherboards which contain PCI bridges so that multiple motherboard components work compatibly.  Infringing motherboards, PCs, and laptops include bridge drivers to allow communications between otherwise incompatible buses.

18.    The '045 Patent generally relates to configurable radio card and wireless terminal. The technology described in the '045 Patent was developed by Hong Lieu Winston, Cheng Wang, David Kiley, and Charles Chia-Yi Pai.  For example, the technology is implemented by infringing motherboards, laptops and PCs which push updates to a radio card device.

19.    The '613, Patent generally relates to communication protocols for serial

peripheral devices.  The technology described in the '613 Patent was developed by Jude J. Katsch.  For example, the technology is implemented by motherboards, laptops, and desktop PCs which determine if a peripheral device is branded, and if not, the peripheral device is initialized.

20.    The '799 Patent and the '535 Patent generally relates to digital storage apparatus with rotatable magnetic media and head arrangements for accessing the media.  The technology described in the '799 Patent was developed by John F. Fletcher and the technology described in the '535 Patent was developed by Curtis H. Bruner, Lance R. Carlson, and Jeffrey E. Mast.  For example, the technology is implemented by infringing, laptops and PCs that contain Hard Disk Drives (HDDs) having a serial interface and utilize a flexible circuit stiffener with a ramp arrangement configured for receiving the actuator arm in a parked position.

21.    Third parties Western Digital ("WD") and Hitachi Global Storage Technologies ("HGST") supply Hard Disk Drives ("HDDs") that implement the infringing technologies. These hard drives include WD Blue, Black, Red, Purple, and Gold drives, as well as HGST Ultrastar, Travelstar, Deskstar, Endurastar, and Cinemastar drives.  MSI makes, uses, sells, and/or imports computers, such as desktops, laptops, tablets, and servers that include one or more WD and/or HGST HDDs.  For example, upon information and belief, these infringing computers include the MSI computers that include one or more WD and/or HGST HDDs, such as the HGST Travelstar 5k1500.

22.    The '587 Patent and the '280 Patent generally relates to computer devices having modified one or more of the operating states or displayed content.  The technology described in the '587 and '280 Patents was developed by John T. Orchard and Christopher R. Uhlik.  For example, the technology is implemented by infringing laptops and PCs that contain motion detection sensors and a motion control agent which modify one or more of the operating states of

the computing device based on input from motion detectors.

23.    MSI has infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products including motherboards, desktop PCs, laptop computers, and associated software that infringes the Patents-in-Suit.

## COUNT I
### (Infringement of the '947 Patent)

24.    Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

25.    EGT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '947 Patent.

26.    Defendant has and continues to directly infringe the '947 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '947 Patent.  Such products include motherboards that utilize the Intel X299, IntelZ370, Intel X99, Intel Z270, Intel H370, Intel H310, Intel B365, Intel B360, Intel B250, Intel H81, Intel Q270, Intel H110, Intel C246, Intel C422, AMD TRX40, AMD X570, AMD X470, AMD X399, AMD X370, AMD B450, AMD B350, AMD A320 Chipsets that include bridge drivers to allow communications between otherwise incompatible buses.  For example, the above chipsets allow for communication between the graphics, memory, PCI, USB, and I/O communicate with one another through the use of drivers.  On information and belief, such MSI products include at least the MSI MEG, MPG, MAG, ENTHUSIAST GAMING, PERFORMANCE GAMING, ARSENAL GAMING, CONTENT CREATION, PRO, CSM, and ECO Series motherboards.

27.    For example, Defendant has and continues to directly infringe at least claim 1 of

the '947 Patent by making, using, offering to sell, selling, and/or importing into the United States motherboards that contain a bridge driver adapted to permit communications from a first communication bus to a second communication bus via a bridge. Upon information and belief, MSI's bridge drivers are adapted to rebalance a multi-level PCI bridge-based computer system.

28. For example, the MPG X570 GAMING EDGE WIFI motherboard is compatible with the AMD X570 chipset. The chipset allows communication between graphics, graphics, memory, PCI, USB, and I/O through the use of drivers:



29. The "support" section of the motherboard webpage, included for each of MSI's motherboards, provides links to downloadable drivers which aid in communication between graphics, graphics, memory, PCI, USB, and I/O:





30.    Defendant has and continues to indirectly infringe one or more claims of the '947

Patent by knowingly and intentionally inducing others, including MSI customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

31.     Defendant, with knowledge that these products, or the use thereof, infringe the '947 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '947 Patent by providing these products to end users for use in an infringing manner.

32.     Defendant has and continues to induce infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '947 Patent, but while remaining willfully blind to the infringement.

33.     EGT has suffered damages as a result of Defendant's direct and indirect infringement of the '947 Patent in an amount to be proved at trial.

34.     EGT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '947 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT II
### (Infringement of the '045 Patent)

35.     Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

36.     EGT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '045 Patent.

37.     Defendant has and continues to directly infringe the '045 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by

making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '045 Patent. Such products include computer devices, motherboards, laptops, phones and PCs that have built in Bluetooth chips devices containing memory which receive updates and information. Infringing motherboards, laptops, and PCs which utilize Bluetooth, allow for exchanges of data using ultra high frequency radio waves. On information and belief, such MSI products include at least the MSI motherboards such as the MSI MEG, MPG, MAG, ENTHUSIAST GAMING, PERFORMANCE GAMING, ARSENAL GAMING, CONTENT CREATION, PRO, CSM, and ECO Series motherboards; MSI laptops including GS65 STEALTH Laptop, GS75 STEALTH Laptop, GE65 RAIDER Laptop, GE75 RAIDER Laptop, GP65 LEOPARD Laptop, GP75 LEOPARD Laptop, GL65 Laptop, GF63 Laptop, GF65 Laptop, GF75 Laptop, ALPHA 15 Laptop, CREATER 15M Laptop, CREATER 17M Laptop, CREATER P65 Laptop, CREATER P75 Laptop, PRESTIGE 14 Laptop, PRESTIGE 15 Laptop, PS63 MODERN Laptop, MODERN 14 Laptop, PS42 Laptop, WS65 Laptop, WS75 Laptop, WE63 Laptop, WE73 Laptop, WE75 Laptop, GP62 LEOPARD Laptop, GP63 LEOPARD Laptop, GP72 LEOPARD Laptop, GP72 LEOPARD Laptop, GL62 Laptop, GL72 Laptop, GF62 Laptop, GV72 Laptop, GT63 TITAN Laptop, GT75 TITAN Laptop, GT76 TITAN Laptop, GT83 TITAN Laptop, GS63 STEALTH Laptop, GS73 STEALTH Laptop, GE63 RAIDER Laptop, GE73 RAIDER Laptop, GL63 Laptop, GL73 Laptop, GL75 Laptop, GF72 Laptop, GV62 Laptop, VORTEX W25 Laptop, WT72 Laptop, WT73 Laptop, WT75 Laptop, WS60 Laptop, WS63 Laptop, WS72 Laptop, and WE62 Laptop; MSI desktop and all-in-one PCs such as the AEGIS desktop, CODEX desktop, CUBI desktop, INFINITE desktop, NIGHTBLADE desktop, TRIDENT desktop, and PRESTIGE desktop; that have built in Bluetooth chips devices containing memory which receive

updates and information.

38.    For example, Defendant has and continues to directly infringe at least claim 1 of the '045 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include a radio card, with a first alterable memory for storing a first hardware definition, a radio comprising reconfigurable hardware that is defined by a first hard definition, a first wireline radio card interface for receiving said first hardware definition and a computer comprising a modem for receiving said first hardware definition via a data network and a second wireline radio card interface for providing said first hardware definition to said radio card for storage in said first alterable memory.

39.    For example, the MPG X570 GAMING EDGE WIFI contains a Bluetooth radio card with memory, a modem, and pushes updates and information, such as a driver update, from a data network, through a wireline radio card interface for storage in the Bluetooth radio card's first alterable memory:







40.    Defendant has and continues to indirectly infringe one or more claims of the '045 Patent by knowingly and intentionally inducing others, including MSI customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using,

offering to sell, selling and/or importing into the United States products that include infringing technology.

41.    Defendant, with knowledge that these products, or the use thereof, infringe the '045 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '045 Patent by providing these products to end users for use in an infringing manner.

42.    Defendant induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '045 Patent, but while remaining willfully blind to the infringement.

43.    EGT has suffered damages as a result of Defendant's direct and indirect infringement of the '045 Patent in an amount to be proved at trial.

44.    EGT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '045 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT III
### (Infringement of the '613 Patent)

45.    Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

46.    EGT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '613 Patent.

47.    Defendant has and continues to directly infringe the '613 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '613 Patent.  On information and

belief, such MSI products include at least the MSI motherboards such as the MSI MEG, MPG, MAG, ENTHUSIAST GAMING, PERFORMANCE GAMING, ARSENAL GAMING, CONTENT CREATION, PRO, CSM, and ECO Series motherboards; MSI laptops including GS65 STEALTH Laptop, GS75 STEALTH Laptop, GE65 RAIDER Laptop, GE75 RAIDER Laptop, GP65 LEOPARD Laptop, GP75 LEOPARD Laptop, GL65 Laptop, GF63 Laptop, GF65 Laptop, GF75 Laptop, ALPHA 15 Laptop, CREATER 15M Laptop, CREATER 17M Laptop, CREATER P65 Laptop, CREATER P75 Laptop, PRESTIGE 14 Laptop, PRESTIGE 15 Laptop, PS63 MODERN Laptop, MODERN 14 Laptop, PS42 Laptop, WS65 Laptop, WS75 Laptop, WE63 Laptop, WE73 Laptop, WE75 Laptop, GP62 LEOPARD Laptop, GP63 LEOPARD Laptop, GP72 LEOPARD Laptop, GP72 LEOPARD Laptop, GL62 Laptop, GL72 Laptop, GF62 Laptop, GV72 Laptop, GT63 TITAN Laptop, GT75 TITAN Laptop, GT76 TITAN Laptop, GT83 TITAN Laptop, GS63 STEALTH Laptop, GS73 STEALTH Laptop, GE63 RAIDER Laptop, GE73 RAIDER Laptop, GL63 Laptop, GL73 Laptop, GL75 Laptop, GF72 Laptop, GV62 Laptop, VORTEX W25 Laptop, WT72 Laptop, WT73 Laptop, WT75 Laptop, WS60 Laptop, WS63 Laptop, WS72 Laptop, and WE62 Laptop; MSI desktop and all-in-one PCs such as the AEGIS desktop, CODEX desktop, CUBI desktop, INFINITE desktop, NIGHTBLADE desktop, TRIDENT desktop, and PRESTIGE desktop that utilize Inter-Integrated Circuit (I²C)[1] and System Management Bus (SMBus) protocols[2] to initialize and brand host devices connected to a communication bus.

48.    For example, Defendant has and continues to directly infringe at least claim 1 of the '613 Patent by making, using, offering to sell, selling, and/or importing into the United States products that initialize and brand host devices connected to a communication bus.    The

---

[1] https://www.nxp.com/docs/en/application-note/AN10216.pdf
[2] http://smbus.org/specs/index.html

infringing systems include one or more MSI motherboard, laptops, and desktops and all-in-one PCs that utilize SMBus protocols, such as the MPG X570 GAMING EDGE WIFI.

49.     Upon information and belief, the MPG X570 GAMING EDGE WIFI utilizes SMBus protocol, which is updated and controlled through its chipset drivers:





50. Upon information and belief, the MPG X570 GAMING EDGE WIFI utilizes a method of initializing devices connected to a communication bus by a host device, determines which devices are branded or unbranded, and if there are no branded devices, sends a first focus command to a device connected to the communication bus, returns configuration information, and brands the device[3]:

---

[3] http://smbus.org/specs/index.html (Pgs. 15, 61, 62)



Figure 2: SMBus Topology

9. Determine if this device has a fixed slave address. If bits 127 and 126 of the UDID are 00b than it has a fixed address, so proceed to step 12. Otherwise proceed to step 10.

10. The device possesses a valid slave address. However, the ARP Master must check this address against the Used Address Pool to insure that no other device has already been assigned the same address. If the received Device Slave Address is found in the Used Address Pool then proceed to step 11. If not, then the device can keep its current slave address but needs acknowledgement from the ARP Master so proceed to step 12.

11. Select a slave address that is not in the Used Address Pool and proceed to step 12.

12. Send the "Assign Address" command with the UDID returned by the device in the "Get UDID" command packet.

13. Check for acknowledgement of all bytes in the "Assign Address" command packet. If any byte was not acknowledged then the ARP Master assumes the

device is no longer present; proceed to step 5 to determine if there are more devices requiring address resolution. If all bytes were acknowledged then the ARP Master assumes that the device has accepted the address assignment; proceed to step 13.

14. The device now has a valid slave address. The ARP Master must add this address to the Used Address Pool. Proceed to step 6 to determine if there are more devices requiring address resolution.

15. The ARP Master checks to see if the received packet was the "Notify ARP Master" command. If so, then it must execute the ARP to resolve the address for the newly added device(s); proceed to step 6. If not, then proceed to step 16.

16. The ARP Master received a non-ARP related packet. Process it accordingly and proceed to step 5.

51.     Defendant has and continues to indirectly infringe one or more claims of the '613 Patent by knowingly and intentionally inducing others, including MSI customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology that utilize SMBus protocols, such as the MPG X570 GAMING EDGE WIFI.

52.     Defendant, with knowledge that these products, or the use thereof, infringe sthe '613 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '613 Patent by providing these products to end users for use in an infringing manner.

53.     Defendant induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '613 Patent, but while remaining willfully blind to the infringement.

54.     EGT has suffered damages as a result of Defendant's direct and indirect infringement of the '613 Patent in an amount to be proved at trial.

55.     EGT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '613 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT IV
### (Infringement of the '799 Patent)

56.     Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

57.     EGT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '799 Patent.

58.     Defendant has and continues to directly infringe the '799 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '799 Patent.  Such products include computer devices, such as laptops, desktops and servers that utilize rotatable magnetic media with an actuator arm, a flexible circuit arrangement with a flexible circuit stiffener, and a ramp arrangement that is directly attachable to the flexible circuit stiffener and is configured to receive the actuator arm.  On information and belief, such MSI products include at least the GP62 LEOPARD Laptop, GP63 LEOPARD Laptop, GP72 LEOPARD Laptop, GP72 LEOPARD Laptop, GL62 Laptop, GL72 Laptop, GF62 Laptop, GV72 Laptop, AEGIS Desktop,

INFINITE Desktop, TRIDENT Desktop, CODEX Desktop, PRESTIGE Desktop, GT63 TITAN Laptop, GT75 TITAN Laptop, GT76 TITAN Laptop, GT83 TITAN Laptop, GS63 STEALTH Laptop, GS73 STEALTH Laptop, GE63 RAIDER Laptop, GE73 RAIDER Laptop, GL63 Laptop, GL73 Laptop, GL75 Laptop, GF72 Laptop, GV62 Laptop, VORTEX W25 Laptop, WT72 Laptop, WT73 Laptop, WT75 Laptop, WS60 Laptop, WS63 Laptop, WS72 Laptop, and WE62 Laptop that include one or more WD and/or HGST HDDs..

59.     For example, Defendant has and continues to directly infringe at least claim 1 of the '799 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include an actuator arm, a flexible circuit arrangement with a flexible circuit stiffener, and a ramp arrangement that is directly attachable to the flexible circuit stiffener and is configured to receive the actuator arm, such as the HGST Travelstar 5k1500.

60.     The Travelstar 5k1500 included in one or more MSI computers and/or servers is a small computer system interface (SCSI) device or the equivalent thereof.  The Travelstar 5k1500 is supported with an actuator arm, a flexible circuit arrangement with a flexible circuit stiffener, and a ramp arrangement that is directly attachable to the flexible circuit stiffener and is configured to receive the actuator arm.

61.     Defendant has and continue to indirectly infringe one or more claims of the '799 Patent by knowingly and intentionally inducing others, including MSI customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such as laptops, desktops, and servers that utilize rotatable magnetic media with an actuator arm, a flexible circuit arrangement with a flexible circuit stiffener, and a ramp arrangement that is directly attachable to the flexible circuit stiffener and is configured to receive

the actuator arm.

62.     Defendant, with knowledge that these products, or the use thereof, infringe the '799 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '799 Patent by providing these products to end users for use in an infringing manner.

63.     Defendant induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '799 Patent, but while remaining willfully blind to the infringement.

64.     EGT has suffered damages as a result of Defendant's direct and indirect infringement of the '799 Patent in an amount to be proved at trial.

65.     EGT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '799 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

### COUNT V
**(Infringement of the '535 Patent)**

66.     Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

67.     EGT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '535 Patent.

68.     Defendant has and continues to directly infringe the '535 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '535 Patent.  Such products include computer devices, such as laptops, desktops and servers that utilize rotatable magnetic

media with an actuator arm, an external serial interface, a host serial interface, and a serial router. On information and belief, such MSI products include at least the GP62 LEOPARD Laptop, GP63 LEOPARD Laptop, GP72 LEOPARD Laptop, GP72 LEOPARD Laptop, GL62 Laptop, GL72 Laptop, GF62 Laptop, GV72 Laptop, AEGIS Desktop, INFINITE Desktop, TRIDENT Desktop, CODEX Desktop, PRESTIGE Desktop, GT63 TITAN Laptop, GT75 TITAN Laptop, GT76 TITAN Laptop, GT83 TITAN Laptop, GS63 STEALTH Laptop, GS73 STEALTH Laptop, GE63 RAIDER Laptop, GE73 RAIDER Laptop, GL63 Laptop, GL73 Laptop, GL75 Laptop, GF72 Laptop, GV62 Laptop, VORTEX W25 Laptop, WT72 Laptop, WT73 Laptop, WT75 Laptop, WS60 Laptop, WS63 Laptop, WS72 Laptop, WE62 Laptop that include one or more WD and/or HGST HDDs.

69.    For example, Defendant has and continues to directly infringe at least claim 1 of the '535 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include an external serial interface, a host serial interface, and a serial router, such as the HGST Travelstar 5k1500.

70.    The Travelstar 5k1500 included in one or more MSI computers and/or servers is a small computer system interface (SCSI) device or the equivalent thereof. On information and belief, the Travelstar 5k1500 is supported with an actuator arm, an external serial interface, a host serial interface, and a serial router.

71.    Defendant has and continues to indirectly infringe one or more claims of the '535 Patent by knowingly and intentionally inducing others, including MSI customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such as laptops, desktops, and servers that utilize rotatable magnetic media with an

actuator arm, an external serial interface, a host serial interface, and a serial router.

72.     Defendant, with knowledge that these products, or the use thereof, infringe the '535 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '535 Patent by providing these products to end users for use in an infringing manner.

73.     Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '535 Patent, but while remaining willfully blind to the infringement.

74.     EGT has suffered damages as a result of Defendant's direct and indirect infringement of the '535 Patent in an amount to be proved at trial.

75.     EGT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '535 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT VI
### (Infringement of the '587 Patent)

76.     Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

77.     EGT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '587 Patent.

78.     Defendant has and continues to directly infringe the '587 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '587 Patent.  On information and belief, such MSI products include at least the VR ONE that contains a motion sensor to detect

motion in one or more of six fields.

79.    For example, Defendant has and continues to directly infringe at least claim 1 of the '587 Patent by making, using, offering to sell, selling, and/or importing into the United States products that contain a motion sensor to detect motion in one or more of six fields.

80.    On information and belief, the accused MSI laptops and phones contain a motion sensor to detect motion in one or more of six fields and a motion control agent.  The accused laptops and phones determine an operating state of the computing device, determine whether an operating system or an application has operation control of the display, and in response to the motion of indication, send a first control signal to modify the operating state of the computing device and a second control signal to modify displayed content of the computing device if the operating system has operation control of the display.

81.    Defendant has and continues to indirectly infringe one or more claims of the '587 Patent by knowingly and intentionally inducing others, including MSI customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

82.    Defendant, with knowledge that these products, or the use thereof, infringe the '587 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '587 Patent by providing these products to end users for use in an infringing manner.

83.    Defendant induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '587 Patent, but while remaining

willfully blind to the infringement.

84.    EGT has suffered damages as a result of Defendant's direct and indirect infringement of the '587 Patent in an amount to be proved at trial.

85.    EGT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '587 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT VII
### (Infringement of the '280 Patent)

86.    Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

87.    EGT has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '280 Patent.

88.    Defendant has and continues to directly infringe the '280 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '280 Patent.  On information and belief, such MSI products include at least the VR ONE that contain a motion sensor to detect motion in one or more of six fields.

89.    For example, Defendant has and continues to directly infringe at least claim 1 of the '280 Patent by making, using, offering to sell, selling, and/or importing into the United States products that contain a motion sensor to detect motion in one or more of six fields.

90.    On information and belief, the accused MSI laptops and phones contain a motion sensor to detect motion in one or more of six fields and a motion control agent.  The accused laptops and phones are configured to sense a first motion and a second motion, each in respective directions or rotational directions, determine if these motions exceed thresholds, and utilize a

controller configured to generate a control signal based at least in part on sensing the first motion and second motion in a predetermined sequence during a predetermine time period, determine a current operating state of the computing device, and modify the current operating state of the computing device based at least in part on the control signal.

91.    Defendant has and continues to indirectly infringe one or more claims of the '280 Patent by knowingly and intentionally inducing others, including MSI customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

92.    Defendant, with knowledge that these products, or the use thereof, infringe the '280 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '280 Patent by providing these products to end users for use in an infringing manner.

93.    Defendant induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '280 Patent, but while remaining willfully blind to the infringement.

94.    EGT has suffered damages as a result of Defendant's direct and indirect infringement of the '280 Patent in an amount to be proved at trial.

95.    EGT has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '280 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, EGT prays for relief against Defendant as follows:

a.    Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.    An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of the Patents-in-Suit;

c.    An order awarding damages sufficient to compensate EGT for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d.    Entry of judgment declaring that this case is exceptional and awarding EGT its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e.    Such other and further relief as the Court deems just and proper.

Dated: February 28, 2020                    Respectfully submitted,


                                 _/s/ Vincent J. Rubino, III_____
                                 Alfred R. Fabricant
                                 NY Bar No. 2219392
                                 Email: afabricant@brownrudnick.com
                                 Vincent J. Rubino, III
                                 NY Bar No. 4557435
                                 Email: vrubino@brownrudnick.com
                                 Peter Lambrianakos
                                 NY Bar No. 2894392
                                 Email: plambrianakos@brownrudnick.com
                                 **BROWN RUDNICK LLP**
                                 7 Times Square
                                 New York, NY 10036

Telephone: (212) 209-4800
Facsimile: (212) 209-4801

Justin Kurt Truelove
Texas Bar No. 24013653
Email: kurt@truelovelawfirm.com
**TRUELOVE LAW FIRM, PLLC**
100 West Houston
Marshall, Texas 75670
Telephone: (903) 938-8321
Facsimile: (903) 215-8510

**ATTORNEYS FOR PLAINTIFF ELITE GAMING TECHNOLOGY, LLC.**